IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHMUEL SANDERS,

    Plaintiff,

v.                                          Civil Action No. CV 99-J-2054-S

JEFFERSON COUNTY DEPARTMENT
OF HUMAN RESOURCES, et al.,

    Defendants.

ENTERED
NOV 5 1999

## MEMORANDUM OPINION

    This case is before this court on Defendants' Jefferson County Department of Human Resources ("DHR"), Jefferson County Food Stamp Office, Alabama State Department of Human Resources, and Charline Pritchett and Larry W. Simmons, both of whom are sued in their individual capacities, motion to dismiss (doc. 9). This court has considered said motion, the briefs submitted in support of and in opposition to, as well as oral arguments heard in open court.

### Factual Background

    Plaintiff is a participant in the Jefferson County Food Stamp Program, a program administered by Jefferson County Department of Human Resources. In December of



1998, Plaintiff applied for renewal of his food stamps. Complaint, ¶ 4. At the time of his application, Plaintiff contends he was a homeless individual as defined by 7 U.S.C. 2012(s)(2). Id. Accordingly, Plaintiff would be entitled to a standard estimate of shelter expenses as a homeless person in determining his food stamp eligibility. See 7 C.F.R. 273.9(d)(5)(i). Additionally, Plaintiff maintains he was entitled to, but was refused yearly income averaging. Complaint, ¶ 5. See 7 C.F.R. § 273.10(c)(ii).

There are seven counts to Plaintiff's complaint. The first count contends Defendants violated 7 C.F.R. §§ 273.9(d)(5)(i), 273.9(d)(5)(ii) and 273.10(c)(ii) as well as his due process rights under the Fourteenth Amendment to the United States Constitution when Defendants allegedly arbitrarily, capriciously, and in an abusive manner discriminated against him for being poor. Plaintiff offers Defendants' failure to deduct the cost of homeless shelter expense as evidence of such violations.

The second count alleges the denial of a formal hearing and Plaintiff's right of confrontation amounts to a deprivation of Plaintiff's rights under the Fifth and Fourteenth Amendments to the Constitution. Complaint ¶ 12.

The third count for relief cites Defendants' failure to submit detailed findings of fact to support the reduction of his monthly food stamp benefit as arbitrary, capricious and an abuse of administrative discretion in direct violation of 7 C.F.R. §§ 273.15(c)(1) and (3); 273.15(f); 273.15(i)(1) and (3); 273.15(k)(1),(2), and (3); 273.15(p)(1), (4) and (6); and 273.15(q)(1),(2), and (3). Complaint ¶ 14.

In his fourth count, Plaintiff professes his belief and loyalty for Judaism. Plaintiff argues, without evidence to support, that most of the people with whom he dealt were predominantly members of various fundamental Christian sects. Complaint ¶ 16. In addition, Plaintiff questions the fairness and impartiality of individuals with whom "the shrill scream of an imagined voice of an imagined "Jesus" person in one's mental ear that the person before you is literally abandoned and outside of G-d's master plan for the entire world, nay, the entire universe" is present, can judge a food stamp claimant. Complaint ¶ 17 (emphasis in the original). Plaintiff claims under 42 U.S.C §§ 1981, 1982, 1983, and 1985 that he was discriminated against on the basis of race as a result of the alleged impartiality of those fundamental Christian employed by the Jefferson County Department of Human Resources. Complaint ¶ 18.

Plaintiff claims violations of the Fifth and Fourteenth Amendments in count five. To support this claim, Plaintiff alleges his due process and equal protection rights were violated when his food stamp benefit level was reduced without a pre-termination hearing. Complaint ¶ 20.

Under the same allegations, Plaintiff makes the claim of outrage in count 6.

Finally, in count seven Plaintiff argues Defendants Jefferson County Food Stamp Office and DHR are without the protection of the Eleventh Amendment. Complaint ¶ 24.

**Legal Analysis**

In the case at bar, Plaintiff alleges a series of violations of various rights under the Due Process Clause and Equal Protection Clause of the Fifth and Fourteenth Amendments to the United States Constitution as well as violations under the Food Stamp Act, 7 U.S.C. § 2011, et seq.. Plaintiff asserts these claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985.

1. *Claims under 42 U.S.C. § 1981*

Plaintiff alleges he was discriminated against on the basis of his race. Plaintiff is a "loyal and firmly committed believer in and adherent to the religion of Judaism." Complaint, ¶ 15. The Supreme Court has held that Jewish ancestry is a race for purposes of § 1981. *Saint Francis College v. Al-Khazaraji,* 481 U.S. 604, 611-613 (1987). Plaintiff maintains such discrimination violates his rights under 42 U.S.C. § 1981.

Section 1981 reads in its pertinent part "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Significant to this provision is the restriction of its scope to forbidding discrimination in the "mak[ing] and enforce[ment]" of contracts alone.

4

"Where an alleged act of discrimination does not involve the impairment of one of these specific rights, §1981 provides no relief. Section 1981 cannot be construed as a general proscription of racial discrimination . . . ." *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372 (1989); *see also Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968)

Plaintiff has failed to state a claim under § 1981. Food stamps are a matter of statutory entitlement, not a contractual right. *See Atkins v. Parker,* 472 U.S. 115, 128, 105 S.Ct. 2520, 2528 (1985) (food stamps, like welfare benefits, are considered statutory entitlements). Accordingly, even if Plaintiff sufficiently plead his allegations of racial discrimination,[1] such allegations would fall outside the parameters of rights under §1981.

2. *Plaintiff's 42 U.S.C. § 1982 Claim.*

Title 42 of the United States Code, §1982 protects the right of citizens to "hold" real and personal property. It states: All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. 42 U.S.C. § 1982. Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to "prohibit all racial discrimination, private and public, in the sale and rental

---

[1] Plaintiff's complaint contains nothing more than conclusory statements of discrimination which is insufficient for purposes of alleged civil rights violations. *See Fullman v. Graddick,* 739 F.2d 553 (11th Cir. 1984).

of property." *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 435 88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189 (1968) (referring to § 1982 as a comprehensive statute forbidding all racial discrimination affecting the basic civil rights enumerated in the Act.)

Through the legislative history of the Act, it is clear the term "race" was used to embody all identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. *See Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987) (*citing Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987)). Those of Jewish ancestry are members of the protected class under § 1982. *Id.* However, in the case at bar, Plaintiff's claim fails under § 1982 because that section protects only the right of members of all races to inherit, purchase, lease, sell, hold, and convey property, not the right to receive food stamps.

3. *Claims under 42 U.S.C. § 1983.*

Plaintiff claims under 1983 violations of his Fifth and Fourteenth Amendment rights, as well as violations of the Food Stamp Act.[2] Specifically, Plaintiff maintains his rights of due process and equal protection under the Fifth and Fourteenth Amendments were violated. Additionally, Plaintiff alleges his rights under 7 C.F.R. §§ 273.9(d)(5)(i),

---

[2] The mandatory language of the Food Stamp Act creates enforceable rights under 42 U.S.C. § 1983. *See Gonzalez v. Pingree,* 821 F.2d 1526, 1528 (11th Cir.1987); *Wehunt v. Ledbetter,* 875 F.2d 1558, 1571 (11th Cir. 1989).

273.10(c)(3)(ii), 273.15 (c)(1) and (3), 273.15(k)(1), (2), and (3), 275.15(p)(1),(4) and (6), 273.15(q)(1), (2), and (3) were violated.

As the DHR and Jefferson County Food Stamp Office are not "persons" under 42 U.S.C. § 1983, a cause of action can not be had against them. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304,2313, 105 L. Ed. 45 (1989). Accordingly, all claims against these defendants are to be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The remaining defendants, Charline Pritchett and Larry W. Simmons have been sued in their individual and official capacities. As to claims against these defendants acting in their official capacities, the Eleventh Amendment operates as a bar. The Eleventh Amendment reads as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

*Edelman* recognized that an award of damages against a state officer in an official capacity "will obviously not be paid out of the pocket of [the officer]," *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356, but rather will "inevitably come from the general revenues of the

7

State," *id.* at 665, 94 S.Ct. at 1357, a result the Court found to be contrary to the purposes of the Eleventh Amendment. However, there are two ways in which this immunity can be overcome, congressional abrogation or the state's waiver of immunity.

By an explicit Congressional enactment through Congress' legislative powers, state immunity under the Eleventh Amendment may be abrogated. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Because § 1983 itself has been held not to be a Congressional abrogation of the states' immunity from damage suits, there is no Congressional abrogation in the instant case. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman,* 415 U.S. at 674-77, 94 S.Ct. at 1361-63.

Plaintiff maintains Congress abrogated the State's immunity with regard to causes of action arising under the Food Stamp Act. In support of his argument, Plaintiff cites to the passage of 42 U.S.C. § 2000d-7 as abrogation of Eleventh Amendment immunity for Food Stamp Act violations. Section 2000d-7 states "a State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation . . . of the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance. 42 U.S.C. § 2000d-7 (1986). Plaintiff contends the Food Stamp Act falls within the scope of this protection. However, Congress' specific enumeration of four separate acts to which § 2000d-7

8

applies, leaves this Court to believe the exclusion of the Food Stamp Act was purposeful.[3] *See Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 937 (5th Cir. 1992). Regardless, the intent of Congress to abrogate is unclear and therefore the argument for abrogation fails. *See Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114 (1996), *see also State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142 (1985) (in order for Congress to abrogate immunity under the Eleventh Amendment, it must make that intention clear).

However, a cause of action may be had against Defendants Pritchett and Simmons in their individual capacities. "Personal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985). Unlike suits in which the state, one of the state's agencies, or a responsible state officer sued in an official capacity is a named defendant, the Eleventh Amendment does not provide immunity for suits against state officers individually. See *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

In suits against officials in their individual capacity, the doctrine of qualified immunity applies. To qualify for protection under this doctrine and therefore be shielded

---

[3] This premise is further supported by the fact that § 2000d-7 was passed twenty-two years after the enactment of the Food Stamp Act. If Congress had intended abrogation with respect to the Food Stamp Act through the passage of the § 2000d-7, it failed to unequivocally do so, a burden of which they are familiar.

from liability for civil damages, government officials must show their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Lassiter v. Alabama A&M Univ. Bd. of Trustees,* 28 F.3d 1146 (11th Cir. 1994). Such conduct is evaluated under an objective, reasonable official standard. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

The objective-reasonableness test is a two part analysis. First, the defendant public official must prove that he was performing a discretionary function within his authority when the alleged violation occurred. *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (citations omitted). A government official may prove that he was acting within the scope of his authority by showing facts and circumstances that would indicate that his actions were part of his duties and were taken in accordance with those duties. *Reeves v. Thigpen,* 879 F.Supp. 1153, 1167 (N.D. Ala. 1995) (*citing Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988); *Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 939 (5th Cir.1992)).

Second, once the defendant proves that he was acting within his discretionary authority, the burden then shifts to the plaintiff to prove that the defendant did not act in good faith. *Hutton,* 919 F.2d at 1537. The plaintiff must meet this burden by establishing that "the defendant public official's actions 'violated clearly established

10

constitutional law.' " *Id.* (citations omitted). The second prong of the objective-reasonableness test has two sub- parts. First, the court must find that the constitutional law in question was clearly established when the alleged violation occurred. *Id.* at 1538. Second, the court must find that "there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law." *Id.*

### a. Food Stamp Act violations

There is no doubt Defendants Pritchett and Simmons were acting within their discretionary authority at the time the calculations for Plaintiff's food stamp benefits and failure to average his income were made. *See Cronen,* 977 F.2d 934, 939 (5th Cir. 1992) (part of the duties of the individual defendants is to interpret the general language of the Food Stamp Act statutes and regulations and apply them to concrete circumstances). Accordingly, whether Pritchett and Simmons are entitled to qualified immunity for their decisions in Plaintiff's case is a question of whether the law was clearly established at the time their decision was made.

Under § 2012(s)(2)(D), a "homeless individual" is an individual who has a primary nighttime residence that is a public or private place not designed for, or ordinarily used as, a regular sleeping accommodation for human beings. 7 U.S.C. § 2012(s)(2)(D). In support of his argument that he is a homeless individual as defined by the statute, Plaintiff

has set forth a description of the room he rents. The building was built around 1912 and designed for regular sleeping accommodations. The individual rooms have no plumbing facilities but the building itself does contain restrooms with showers. Its primary use is as a band rehearsal space. Plaintiff's Opposition to Defendants' Motion to Dismiss at 6.

Section 2012(s)(2)(D) does not speak to the quality, or lack thereof, of the accommodations necessary for an individual to qualify as a homeless individual. While noting Plaintiff does in fact rent this space at his choosing, and that he has separate quarters and bathing facilities, this Court does not reach the issue of whether Plaintiff's rental space is sufficient to qualify as a "regular sleeping" accommodation. The fact that neither the statute nor the regulations speak to the standard defining "regular sleeping accommodation," leaves this Court to hold the Defendants did not violate any clearly established right of the Plaintiff. Accordingly, Defendant's Pritchett and Simmons are afforded qualified immunity as to their decision Plaintiff was not a homeless individual as contemplated by 7 U.S.C. § 2012(s)(2)(D).

Plaintiff next contends Defendants Pritchett and Simmons violated his right to have his income averaged as provided for in the regulations. Under § 273.10(c)(3)(ii), a food stamp claimant is entitled to average his income over a twelve month period where the claimant derives his income in a period of time shorter than one year. 7 C.F.R. § 273.10(c)(3)(ii). Plaintiff, by his own admission, does not derive his entire annual income in less than twelve months. Affidavit of Shmuel Sanders. Therefore, Plaintiff

12

was not entitled to income averaging and Defendant's Pritchett and Simmons acted within the scope of the regulations in denying Plaintiff such averaging.

That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. *See Lassiter,* 28 F.3d at 1149 (*citing Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. *See Id.* (*citing Malley v. Briggs,* 475 U.S. 335, 341-43, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986)).

### b. *Plaintiff's claimed due process violations*

Plaintiff next claims he did not receive a fair hearing during the recertification process, that Defendants failed to submit a detailed finding of fact in support of their decision, and that he has been subject to inconsistent certification periods, all in violation of his Fifth and Fourteenth Amendment rights.

To prevail on a due process claim, Plaintiff must first demonstrate that he was deprived of a protected property interest. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153-54 (1982). Plaintiff argues he has a property right in food stamp benefits established under the Food Stamp Act and its accompanying regulations.

13

Food stamp benefits are a matter of statutory entitlement and accordingly treated as property under the Fifth Amendment. *Atkins v. Parker,* 472 U.S. 115, 127, 105 S.Ct. 2520, 2528 (1985). In the case at bar, Plaintiff attacks the recertification procedure used to determine the level of food stamp benefits to which he is entitled. Accordingly, his asserted property right does not arise out of the food stamp entitlement itself but rather the recertification process.

The Seventh Circuit has addressed the issue of food stamp claimant's due process rights in the recertification procedure. *See Shvartsman v. Apfel,* 138 F.3d 1196, 1198 (7th Cir. 1998). The plaintiff in *Shvartsman,* argued *Logan* extended property rights to procedures established for the purpose of obtaining the entitlement as well as to the entitlement itself. *See Shvartsman,* 138 F.3d at 1198. The Seventh Circuit declined the invitation to extend the holding in *Logan* by stating:

> We do not believe that *Logan* may be read so broadly. *Logan* does refer to the "right to use the FEPA's adjudicatory procedures", *id.* at 429-30, 102 S.Ct. at 1154-55, and the Court drew an analogy between Logan's property interest in his discrimination claim and the "right of access to courts" recognized by the Court in other contexts, *id.* at 430 n. 5, 102 S.Ct. at 1154 n. 5. . . . In short, the property interest in *Logan* was the underlying discrimination claim; the adjudicatory process constituted the process that was due in connection with the deprivation of that property interest. Thus, the plaintiffs' reliance on *Logan* gets them no closer to their goal of establishing a property interest in the Food Stamp recertification procedures. This result is unsurprising, for defining access to procedures as a protectable property interest would eliminate the distinction between property and the procedures that are constitutionally required to protect it. The Supreme Court has

> repeatedly emphasized the importance of this distinction, and the
> Court has not looked favorably upon claims of a property entitlement
> to a set of procedures. *See, e.g., Cleveland Bd. of Educ. v.
> Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d
> 494 (1985) ("[T]he Due Process Clause provides that certain
> substantive rights--life, liberty, and property-- cannot be deprived
> except pursuant to constitutionally adequate procedures. The
> categories of substance and procedure are distinct."); *Olim v.
> Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d
> 813 (1983) ( "Process is not an end in itself. Its constitutional
> purpose is to protect a substantive interest to which the individual
> has a legitimate claim of entitlement.");

*Shvartsman,* 138 F.3d at 1199.

Plaintiff impliedly acknowledges no property rights exist in the recertification procedure, arguing instead that Defendants have side stepped the procedural due process rights inherent in food stamp entitlement by shortening certification periods. Plaintiff maintains that by shortening the certification period, Defendants are able to reduce Plaintiff's benefits under the guise of recertification and absent Plaintiff's protection under the due process clause. Complaint, ¶ 19.

### c. *Plaintiff's claimed equal protection violations*

Plaintiff makes a claim under § 1983 for discrimination based on his Judaism. However, Plaintiff has failed to do more than assert conclusory allegations against all Defendants. Accordingly, Plaintiff's claimed violation of his equal protection must fail. *See Fullman v. Graddick,* 739 F.2d 553 (11th Cir. 1984). This lack of specificity makes it impossible for the court to determine whether he states a claim for which relief can be

granted under § 1983 and whether qualified immunity protects Defendants from this suit.

Plaintiff contends the Supreme Court's holding in *Leatherman* has lowered the pleading standard in 1983 actions. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). However, Plaintiff ignores the fact the Supreme Court expressly refrained from deciding whether "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Arrington v. Dickerson,* 915 F.Supp. 1503, 1513 (M.D. Ala. 1995) (pleading with specificity particularly important when trying to establish whether "clearly established" rights have been violated)(*citing Leatherman,* 507 U.S. at 167, 113 S.Ct. at 1162; *Malone v. Chambers County Bd. of Comm'rs.,* 875 F.Supp. 773, 790 (M.D.Ala.1994) (Albritton, J.) (finding that the holding in *Leatherman* did not repeal the heightened pleading standard in § 1983 actions where a defendant official is entitled to assert the defense of qualified immunity).

As Plaintiff has failed to specifically plead allegations of intentional discrimination based on his Judaism, the Court holds he has failed to state a claim upon which relief can be granted.

4. *Claim under 42 U.S.C. § 1985*

Plaintiff contends Defendants racially discriminated against him in violation of 42 U.S.C. § 1985. Complaint ¶ 10. Section 1985(3) states in its pertinent part: "if two or

16

more persons in any State or Territory conspire, . . . for the purpose of depriving, either directly or indirectly, any person . . . of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To state a claim under 1985, Plaintiff must set forth facts showing some intentional and purposeful deprivation of constitutional rights. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1797 (1971); *see also Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

This complaint does contain some general allegations that defendants successfully conspired to deprive plaintiff of his rights. However, Plaintiff was bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. Consequently, Plaintiff's failure to go beyond such conclusory allegations is fatal to his claim.

## 5. *Plaintiff's Claim of Outrage*

Plaintiff finally claims the tort of outrage for "defendants adopted deliberate policies of economic coercion." Complaint at ¶ 2. To make a claim of outrage, Plaintiff must show: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme or outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. To rise to the level of extreme or outrageous as required in the second prong, the conduct must go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

17

society." *American Road Service v. Immon,* 394 So.2d 361, 365 (Ala. 1980)(*citing* Restatement (Second) of Torts S 46 cmt. d, at 72 (1948)).

The Alabama Supreme Court has recognized the tort of outrage in a very limited context. *See Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala. 1993). The conduct alleged here, withholding the homeless shelter deduction and failure to average Plaintiff's income, does not rise to the level of egregiousness contemplated by the Alabama Supreme Court. Accordingly, this claim fails as well.

### Conclusion

In accordance with the separate order this day entered and the reasons set forth in this opinion;

It is therefore **ORDERED** that all Defendants' motion to dismiss on all counts is due to be and hereby is **GRANTED** and Plaintiff's complaint is due to be and hereby is **DISMISSED WITH PREJUDICE**

**DONE** and **ORDERED** this the ___5___ day of November, 1999.

                                                 /s/ *[signature]*
                                                 USDJ